orders. So far as appears from the record before us, there was no time fixed in the order for the payment of the costs, and, under the provisions of section 779 of the Code of Civil Pocedure, the defendant would not be in default until 10 days after the 25th day of October, or until the 4th day of November; so that all of the time when the defendant was asking for an extension of time from the 26th of October to the 4th day of November there was no reason why the court might not have proceeded to act in behalf of the defendant, and we are persuaded that the fact that the order to show cause was not made until the 11th of November did not deprive the court of the power to give effect to the spirit of its previous order.

The plaintiff, if he attempted to force a trial under the pleadings as they would stand with the matter struck out would undoubtedly be met by a motion at the trial for an amendment, and there would be no justification in denying the defendant this right, under the provisions of section 723 of the Code of Civil Procedure. Indeed, it seems that the plaintiff, in serving a notice of trial, would waive the stay to the extent of permitting the defendant to take part in the trial (Mattice v. Shelland, 76 App. Div. 236, 78 N. Y. Supp. 537), and the right to participate in the trial carries with it the right to any defense which the defendant might properly plead; and especially would this be true where he had been given the right to amend on the plaintiff's own motion to strike out from the defendant's pleadings. As was said in the case last above cited:

"The section [779] is not intended to prevent a party moved against from asserting his natural legal right of self-defense (Randell v. Abrisqueta, 20 Abb. N. C. 292), but prevents an onward movement in the action. (Bigler v. Nat. Bank of Newburgh, 26 Hun, 520)."

The defendant cannot have the aid of the court in any onward movement, but this does not prevent him from fairly presenting any defense which he may have to the action asserted by the plaintiff, and pleadings presenting the issues are necessary to such a defense. If the plaintiff notices the action for trial, he must permit the defendant to avail itself of its defenses. The policy of the law is not to outlaw litigants and subject them to unjust verdicts merely in default of motion costs, and, as the defendant would be entitled to an amendment of his pleadings in accord with his proposed answer, no right of the plaintiff is prejudiced by the order appealed from. He is rather in a better position than he would be to delay such amendment until the time of the trial, and then be compelled to meet the issues that might be presented or delay the trial.

The order appealed from should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.

---

(49 Misc. Rep. 280.)

In re MARX'S ESTATE.

(Surrogate's Court, Kings County. January, 1906.)

1. WILLS—CONSTRUCTION—DISTRIBUTION OF RESIDUUM.

An executrix, under the authority of a will and the contract constituting a partnership, carried on the business of the decedent and earned a profit. The will directed the executors to sell the residuum of the estate and re-

ceive the profits, and also the profits of the partnership business when wound up, and the net income thereof, and also provided for its distribution among certain trusts. *Held*, that the profits of the partnership made by the executrix were a part of the fund to be distributed.

2. EXECUTORS AND ADMINISTRATORS—UNAUTHORIZED PAYMENT.

Where the executrix paid the federal inheritance tax some time after the act had been repealed. she should be surcharged with the payment.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, § 439.]

In the matter of the accounting of the estate of Frederick Marx, deceased. Decree reforming account. Rendered.

See 94 N. Y. Supp. 151.

Charles H. Kelby and Albert W. Venino, for executrix.
Benedict & Benedict, for objectors.
Thomas E. Pilsworth, special guardian.

CHURCH, S. The question of the construction of the will of the deceased is raised upon this accounting. The deceased was in copartnership for many years with one Frederick Rawolle, who was also named as one of the executors under the will. By the copartnership agreement, a copy of which is annexed to the account, provision had been made for the conduct of such business in case of the death of either partner, and by the will of the deceased provision had also been made for the carrying on of such copartnership by the executors in pursuance of and in conformity with the copartnership agreement. On the 1st of December, 1901, which was the first of the month following the death of the testator, the books of the copartnership were duly balanced and the interest of the deceased was fixed at $299,574.23. In pursuance of the provisions of the copartnership contract and the will, the executrix continued the business until July 6, 1905, and the business earned a profit during that time amounting to the sum of $125,639.39. Upon the interpretation of the will of the deceased depends the question of what is to become of this sum of money, and how the same is to be treated. The paragraph of the will under consideration which is the subject of dispute is the fifth. Briefly stated, the testator directs his executors to sell all the residuum of his estate. He then provides as follows: "To receive the proceeds thereof, and also the proceeds of my said copartnership business when wound up and the net income thereof, and I give and bequeath the same as follows." He then provides that to his wife there shall be given "one-third thereof"; that to his executors in trust "one-sixth thereof," the income to be given to his wife, remainder to certain relatives of the wife; to his executors another "one-sixth thereof," income to his wife, remainder to certain relatives of the deceased; the remaining "one-third thereof" to be divided among certain relatives of the deceased. As some of the persons mentioned in this paragraph predeceased the testator, he made a codicil to his will, which has also been duly admitted to probate, which directs a further division "thereof," and also creates certain trusts out of such sum.

The objectors contend that the corpus of the fund. which is thus to be split up in the manner described consists of the amount realized

from the sale of the residuum of the testator's estate, the amount realized from the sale of the copartnership business, and the $125,000, the amount of profits made during the conduct of such business by the executrix; and that, by dividing the total of these amounts, the sum directed to be paid or held in trust under the various subdivisions of the fifth section can be ascertained. The executrix, on the other hand, argues that the continuance of the business of the copartnership is to be regarded as an investment by the trustees under the provision of this section, and that the amount of profits of such business, therefore, or the "net income thereof," is to be treated as the return from the trust investment, and should thus be distributed, and not considered in determining the corpus of the general fund. I am unable to accept this contention of the executrix as a correct interpretation of the section of the will in question. The said fifth paragraph distinctly mentions three separate funds, the aggregate of which is to be the sum divided into thirds or sixths. This is not expressed in any ambiguous language, as such section distinctly says, "the proceeds of the residuum, the proceeds of the copartnership business and the net income thereof," and that "the same" is to be the amount thus divided. If the interpretation of the executrix is to control, then the words "the net income thereof" in the above-quoted paragraph must be completely ignored. The executrix urges that such a construction would constitute an illegal accumulation of income, and that where, there is doubt as to the meaning of a testator's will, such a construction will be adopted as will make the same legal rather than a construction which will make it illegal. As a statement of a general legal principle this is undoubtedly true, but this rule is to be applied only when there is ambiguity in the provisions of the will. Where the meaning of the will is perfectly plain, then it makes no difference whether such meaning may lead to a legality or illegality, but it must be construed in accordance with its evident intent.

It is neither necessary nor proper for me to consider the question of whether this is or is not an unlawful accumulation of income, as under the condition of the case at the present time the determination of that proposition is not required in order to dispose of the questions raised on this accounting. As the theory upon which the executrix has, therefore, handled these funds and also drafted her account is an incorrect one, the decree herein will practically reform the entire account. The different interests which each of the persons hereto will then receive under the same will be simply a matter of arithmetic, and it is not necessary for me to calculate the same or state them in this opinion.

Objection has also been raised to the executrix's paying the federal inheritance tax. It appears that the executrix paid this some time after the act in question was repealed, although the deceased had died prior to such repeal. In my judgment, the estate was not subject to such tax, and, the payment of the same by the executrix being improper, she should be surcharged with the same.

Let a decree reforming the account in accordance with the views herein expressed be presented.

Decreed accordingly.